Authentisign ID: 8070A156-6074-475B-934F-608AA48E98A5



**IDAHO REALTORS** *The Voice of Real Estate*

# RE-24 VACANT LAND
# REAL ESTATE PURCHASE AND SALE AGREEMENT

JULY 2017 EDITION

Page 1 of 6

THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, **CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT** BEFORE SIGNING.
NO WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF HABITABILITY, AGREEMENTS
OR REPRESENTATIONS NOT EXPRESSLY SET FORTH HEREIN SHALL BE BINDING UPON EITHER PARTY.

1  ID#_____ 98657748 _____         DATE_____ 05/30/2018 _____
2
3  **LISTING AGENCY**____ Mark Bottles Real Estate Serv. ____ Office Phone # 208-377-5700   Fax #_____
4  Listing Agent____ Norman Brown ____ E-Mail____ nbrown@markbottles.com ____ Phone # 208-866-2450
5  **SELLING AGENCY**_____ G & T Realty _____ Office Phone # 208-573-2164   Fax # 208-361-3161
6  Selling Agent____ Traci Stewart ____ E-Mail____ tracistewart88@gmail.com ____ Phone # 208-573-2164
7  **1. BUYER:**_____ Loretta L Bittenbender _____
8  (Hereinafter called "**BUYER**") agrees to purchase, and the undersigned SELLER agrees to sell the following described real estate hereinafter referred to
9  as "**PROPERTY**" **COMMONLY KNOWN AS** ___ TBD   W Idaho Ave ___
10 ____ Glenns Ferry ____ City____ Elmore ____ County, ID, Zip____ 83623 ____ legally described as: **See Documents Tab**
11
12 **OR** Legal Description Attached as exhibit_____ (**Exhibit must accompany original offer and be signed or initialed by**
13 **BUYER and SELLER.**)
14 **2. $** _____ 30,000.00 _____ **PURCHASE PRICE:** ____ Thirty Thousand ____ **DOLLARS,**
15 payable upon the following **TERMS AND CONDITIONS** (not including closing costs):

16 This offer is contingent upon the sale, refinance, and/or closing of any other property ☐ Yes ☒ No
17 **3. FINANCIAL TERMS:** Note: A+C+D+E must add up to total purchase price.
18 **(A). $** _____ 500.00 _____ **EARNEST MONEY:** BUYER hereby offers____ Five Hundred ____
19 **DOLLARS** as Earnest Money in the following form: ☐cash ☒personal check ☐cashier's check ☐note (due date):
20 ☐other_____ and ☐receipt is hereby acknowledged OR ☒ BUYER will deliver
21 Earnest Money within_____ business days (three [3] if left blank) of acceptance.
22 Earnest Money to be deposited in trust account ☒upon receipt or ☐upon acceptance by BUYER and SELLER or ☐other_____
23 _____ and shall be held by: ☐Listing Broker
24 ☐Selling Broker ☒ Closing Agency☐other_____ for the benefit of
25 the parties hereto.
26 THE RESPONSIBLE BROKER SHALL BE:____ **TRACI STEWART - G&T REALTY** ____
27 **(B). ALL CASH OFFER:** ☐NO ☒YES **If this is an all cash offer do not complete Sections 3C and 3D, fill blanks with N/A** (Not Applicable). **IF**
28 **CASH OFFER BUYER'S OBLIGATION TO CLOSE SHALL NOT BE SUBJECT TO ANY FINANCIAL CONTINGENCY.** BUYER agrees to provide
29 SELLER within _____ business days (five [5] if left blank) from the date of acceptance of this agreement by all parties written confirmation of sufficient
30 funds and/or proceeds necessary to close transaction. Acceptable documentation includes, but is not limited to a copy of a recent bank or financial
31 statement.

32 Cash proceeds from another sale: ☐ Yes ☒ No
33 **(C). $**_____ **NEW LOAN PROCEEDS:** This Agreement is contingent upon BUYER obtaining the following financing:
34 **FIRST LOAN** of $_____ not including mortgage insurance, through ☐FHA, ☐VA, ☐CONVENTIONAL, ☐IHFA,
35 ☐RURAL DEVELOPMENT, ☐OTHER_____ with interest not to exceed _____% for a period of _____ year(s) at:
36 ☐Fixed Rate ☐Other_____. In the event BUYER is unable, after exercising good faith efforts, to obtain the indicated financing,
37 BUYER's Earnest Money shall be returned to BUYER.
38 **SECOND LOAN** of $_____through ☐FHA, ☐VA, ☐CONVENTIONAL, ☐IHFA, ☐RURAL DEVELOPMENT,
39 ☐OTHER_____ with interest not to exceed _____% for a period of _____year(s) at: ☐Fixed Rate ☐Other_____
40 **LOAN APPLICATION:** BUYER ☐has applied OR ☐shall apply for such loan(s). Within_____ business days (ten [10] if left blank) of final acceptance
41 of all parties, BUYER agrees to furnish SELLER with **a written confirmation showing lender approval of credit report, income verification,**
42 **debt ratios, and evidence of sufficient funds and/or proceeds necessary to close transaction in a manner acceptable to the SELLER(S) and**
43 **subject only to satisfactory appraisal and final lender underwriting. If an appraisal is required by lender, the PROPERTY must appraise at**
44 **not less than purchase price** or BUYER'S Earnest Money shall be returned at BUYER'S request unless SELLER, at SELLER'S sole discretion,
45 agrees to reduce the purchase price to meet the appraised value. SELLER shall be entitled to a copy of the appraisal and shall have 24 hours from
46 receipt thereof to notify BUYER of any price reduction. *BUYER may also apply for a loan with different conditions and costs and close transaction*
47 *provided all other terms and conditions of this Agreement are fulfilled, and the new loan does not increase the costs or requirements to the SELLER.*
48 **FHA / VA:** If applicable, it is expressly agreed that notwithstanding any other provisions of this contract, BUYER shall not be obligated to complete
49 the purchase of the PROPERTY described herein or to incur any penalty or forfeiture of Earnest Money deposits or otherwise unless BUYER has
50 been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration or a
51 Direct Endorsement lender setting forth the appraised value of the PROPERTY of not less than the sales price as stated in the contract.
52
53 If such written confirmation required in 3(B) or 3(C) is not received by SELLER(S) within the strict time allotted, SELLER(S) may at their option cancel
54 this agreement by notifying BUYER(S) in writing of such cancellation within _____ business days (three [3] if left blank) after written confirmation was
55 required. If SELLER does not cancel within the strict time period specified as set forth herein, SELLER shall be deemed to have accepted such written
56 confirmation of lender approval and shall be deemed to have elected to proceed with the transaction. SELLER'S approval shall not be unreasonably
57 withheld.
58
59 **(D). $**_____ **ADDITIONAL FINANCIAL TERMS:**
60 ☐Additional financial terms are specified under the heading "OTHER TERMS AND/OR CONDITIONS" (Section 4).
61 ☐Additional financial terms are contained in a **FINANCING ADDENDUM** of same date, attached hereto, signed by both parties.
62
63 **(E). $** _____ 29,500.00 _____ **APPROXIMATE FUNDS DUE AT CLOSING:** Cash at closing, not including closing costs, to be paid by BUYER at
64 closing, In GOOD FUNDS, which includes: **cash, electronic transfer funds, certified check or cashier's check.**

**BUYER'S** Initials ( *LLB* )(_____) Date 05/30/2018 _____         **SELLER'S** Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. **USE BY ANY OTHER PERSON IS PROHIBITED.** ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

Authentisign ID: 8070A156-6074-475B-934F-608AA48E98A5

**JULY 2017 EDITION**                **RE-24 VACANT LAND PURCHASE AND SALE AGREEMENT**                Page 2 of 6

**PROPERTY ADDRESS:** __TBD___ __W Idaho Ave_____  ___Glenns Ferry___  **ID**  __83623__  **ID#:** ___98657748___

65  **4. OTHER TERMS AND/OR CONDITIONS:**
66  **Seller to provide proof that King Hill Irrigation is current and available to property.**
67
68
69
70
71
72
73
74
75
76
77
78

79  **5. "NOT APPLICABLE" DEFINED:** The letters "n/a," "N/A," "n.a.," and "N.A." as used herein are abbreviations of the term "not applicable." Where this
80  agreement uses the term "not applicable" or an abbreviation thereof, it shall be evidence that the parties have contemplated certain facts or conditions and
81  have determined that such facts or conditions do not apply to the agreement or transaction herein.
82

83  **6. INSPECTION:**
84      (A). *BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL*
85      *MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING:*
86      SIZE: Square footage and lot size. (Any numerical statements regarding these items are APPROXIMATION ONLY, and have not been and will not be
87      verified and should not be relied upon by BUYER.
88      1.  LINES AND BOUNDARIES:  Property lines and boundaries, septic, and leach lines (Fences, walls, hedges, and other natural or constructed barriers
89          or markers do not necessarily identify true property boundaries. Property lines may be verified by surveys.)
90      2.  ZONING AND LAND USE:  Inquiries, investigations, studies or any other means concerning past, present or proposed laws, ordinances, referendums,
91          initiatives, votes, applications and permits affecting the current use of the PROPERTY, BUYER's intended use of the PROPERTY, future
92          development, zoning, building, size, governmental permits and inspections.  Both parties are advised that Broker does not guarantee the status of
93          permits, zoning or code compliance.  The parties are to satisfy themselves concerning these issues.
94      3.  UTILITIES AND SERVICE:  Availability, costs, and restrictions of utilities and services, including but not limited to, sewage, sanitation, water,
95          electricity, gas, telephone, cable TV and drainage.
96      4.  UTILITIES, IMPROVEMENTS & OTHER RIGHTS: SELLER represents that the PROPERTY does have the following utilities, improvements, services
97          and other rights available (describe availability): **SEWER, WATER, KING HILL IRRIGATION**_____
98          _____
99
100     5.  HAZARDOUS MATERIALS: The real estate broker(s) or their agents in this transaction have no expertise with respect to toxic waste, hazardous
101         materials or undesirable substances. BUYERS who are concerned about the presence of such materials should have the PROPERTY inspected by
102         qualified experts. BUYER acknowledges that he/she has not relied upon any representations by either the Broker or the SELLER with respect to the
103         condition of the PROPERTY that are not contained in this Agreement or in any disclosure statements.
104     6.  TAX LIABILITY:  The BUYER and SELLER acknowledge that they have not received or relied upon any statements or representations by the Broker
105         with respect to the effect of this transaction upon BUYER's or SELLER's tax liability.
106

107 **(B). BUYER chooses ☐to conduct inspections; ☒not to conduct inspections.  If BUYER chooses not to conduct inspections skip the remainder of Section 6.**
108 If indicated, BUYER shall have the right to conduct inspections, investigations, tests, surveys and other studies at BUYER'S expense, hereafter referred to
109 as "Buyer's Inspection Contingency." BUYER'S inspection of the PROPERTY includes all aspects of the PROPERTY, including but not limited to
110 neighborhood, conditions, zoning and use allowances, environmental conditions, applicable school districts and/or any other aspect pertaining to the
111 PROPERTY or related to the living environment at the PROPERTY. Unless otherwise addressed BUYER shall, within _____ calendar days (thirty [30] if
112 left blank) from acceptance, complete these inspections and give to SELLER written notice of disapproved items or written notice of termination of this
113 Agreement based on an unsatisfactory inspection. Once BUYER delivers written notice to SELLER it shall end BUYER's timeframe and is irrevocable
114 regardless of if it was provided prior to the deadline stated above. BUYER is strongly advised to exercise these rights and to make BUYER'S own selection
115 of professionals with appropriate qualifications to conduct inspections of the entire PROPERTY. **BUYER'S acceptance of the condition of the PROPERTY**
116 **is a contingency of this Agreement.**
117

118 **(C) SATISFACTION/REMOVAL OF INSPECTION CONTINGENCIES:**
119     1.  If BUYER does not within the strict time period specified give to SELLER written notice of disapproved items or written notice of termination of this
120         Agreement, BUYER shall conclusively be deemed to have: (a) completed all inspections, investigations, review of applicable documents and disclosures;
121         (b) elected to proceed with the transaction and (c) assumed all liability, responsibility and expense for repairs or corrections other than for items which
122         SELLER has otherwise agreed in writing to repair or correct.
123
124     2.  If BUYER does within the strict time period specified give to SELLER written notice of termination of this Agreement based on an unsatisfactory
125         inspection, the parties will have no obligation to continue with the transaction and the Earnest Money shall be returned to BUYER.
126
127     3.  If BUYER does within the strict time period specified give to SELLER written notice of disapproved items, it shall end BUYER's timeframe for
128         inspections and is irrevocable. BUYER shall provide to SELLER pertinent section(s) of written inspection reports upon request, if applicable. Upon
129         receipt of written notice SELLER shall have _____ business days (three [3] if left blank) in which to respond in writing. SELLER, at SELLER's option,
130         may correct the items as specified by BUYER in the notice or may elect not to do so. If SELLER agrees in writing to correct items requested by BUYER,
131         then both parties agree that they will continue with the transaction and proceed to closing. Immediately upon a written response from SELLER that
132         rejects BUYER's requests, in whole or in part, BUYER may proceed under 6(C)(4) below.
133

**BUYER'S** Initials ( _eea_ )( _____ ) Date ___05/30/2018___          **SELLER'S** Initials ( _____ )( _____ ) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

Authentisign ID: 8070A156-6074-475B-934F-608AA48E08A5

PROPERTY ADDRESS: **TBD    W Idaho Ave**                    **Glenns Ferry**    **ID**    **83623**    ID#: **98657748**

134  4. If SELLER does not agree to correct BUYER's items within the strict time period specified, or SELLER does not respond in writing within the strict time
135  period specified, then the BUYER has the option of either continuing the transaction without the SELLER being responsible for correcting these
136  deficiencies or giving the SELLER written notice within _____ business days (three [3] if left blank) that they will not continue with the transaction and
137  will receive their Earnest Money back.
138  5. If BUYER does not give such written notice of cancellation within the strict time periods specified, BUYER shall conclusively be deemed to have
139  elected to proceed with the transaction without repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair or
140  correct. SELLER shall make the PROPERTY available for all Inspections. BUYER shall keep the PROPERTY free and clear of liens; indemnify and hold
141  SELLER harmless from all liability, claims, demands, damages and costs; and repair any damages arising from the inspections.  No inspections may be
142  made by any governmental building or zoning inspector or government employee without the prior consent of SELLER unless required by local law. **No**
143  **inspections may be made by any governmental building or zoning inspector or government employee without the prior consent of SELLER,**
144  **unless required by local law.**
145  **7. TITLE CONVEYANCE:** Title of SELLER is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable except
146  for rights reserved in federal patents, state or railroad deeds, building or use restrictions, building and zoning regulations and ordinances of any
147  governmental unit, and rights of way and easements established or of record. Liens, encumbrances or defects to be discharged by SELLER may be paid out
148  of purchase money at date of closing.  No liens, encumbrances or defects, which are to be discharged or assumed by BUYER or to which title is taken
149  subject to, exist unless otherwise specified in this Agreement.
150  **8. TITLE INSURANCE: There may be types of title insurance coverages available other than those listed below and parties to this agreement**
151  **are advised to talk to a title company about any other coverages available that will give the buyer additional coverage.**
152  (A). PRELIMINARY TITLE COMMITMENT: Within ___ business days (six [6] if left blank) of final acceptance of all parties, ☐SELLER or ☐BUYER shall
153  furnish to BUYER a preliminary commitment of a title insurance policy showing the condition of the title to said PROPERTY. BUYER shall have ___
154  business days (two [2] if left blank) after receipt of the preliminary commitment, within which to object in writing to the condition of the title as set forth in
155  the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if the
156  title of said PROPERTY is not marketable, and cannot be made so within ___ business days (two [2] if left blank) after SELLER'S receipt of a written
157  objection and statement of defect from BUYER, then BUYER'S Earnest Money deposit shall be returned to BUYER and SELLER shall pay for the cost of
158  title insurance cancellation fee, escrow and legal fees, if any.
159  (B). TITLE COMPANY: The parties agree that _____**GUARANTY**_____Title Company located
160  at____**MOUNTAIN HOME**_____**ID**_____ shall provide the title policy and preliminary report of commitment.
161  **(C). STANDARD COVERAGE OWNER'S POLICY:** SELLER shall within a reasonable time after closing furnish to BUYER a title insurance policy in the
162  amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects elsewhere set
163  out in this Agreement to be discharged or assumed by BUYER unless otherwise provided herein. **The risk assumed by the title company in the**
164  **standard coverage policy is limited to matters of public record.** BUYER shall receive a ILTA/ALTA Owner's Policy of Title Insurance. A title
165  company, at BUYER's request, can provide information about the availability, desirability, coverage and cost of various title insurance coverages and
166  endorsements. If BUYER desires title coverage other than that required by this paragraph, BUYER shall instruct Closing Agency in writing and pay any
167  increase in cost unless otherwise provided herein.
168  **(D). EXTENDED COVERAGE LENDER'S POLICY (Mortgagee policy):** The lender may require that BUYER (Borrower) furnish an Extended Coverage
169  Lender's Policy. This extended coverage lender's policy considers matters of public record and additionally insures against certain matters not shown in
170  the public record. **This extended coverage lender's policy is solely for the benefit of the lender and only protects the lender.**
171  **9. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** As part of the BUYER'S inspection of the PROPERTY as set forth in Section 6,
172  BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have _____ business days (ten
173  [10] if left blank) (but in no event shall such time period exceed that time period set forth for inspections in Section 6) to review any CC&Rs that may affect
174  the PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with particularity describing
175  BUYER'S reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any objection to the terms
176  of any CC&Rs affecting the PROPERTY, nothing contained herein shall constitute a waiver of BUYER to challenge CC&Rs directly with a homeowners
177  association after closing.  If BUYER timely and reasonably objects to a term of the CC&Rs, this Agreement shall terminate and the Earnest Money shall be
178  returned to BUYER.
179  **10. SUBDIVISION HOMEOWNER'S ASSOCIATION:** BUYER is aware that membership in a Home Owner's Association may be required and
180  BUYER agrees to abide by the Articles of Incorporation, Bylaws and rules and regulations of the Association. BUYER is further aware that the PROPERTY
181  may be subject to assessments levied by the Association described in full in the Declaration of Covenants, Conditions and Restrictions.  BUYER has
182  reviewed Homeowner's Association Documents: ☐Yes ☐No ☒N/A. Association fees/dues are $_____ per_____.
183  ☐BUYER ☐SELLER ☐Shared Equally ☒N/A to pay Homeowner's Association SET UP FEE of $_____and/or
184  ☐BUYER ☐SELLER ☐Shared Equally ☒N/A to pay Homeowner's Association PROPERTY TRANSFER FEES of $_____ at closing.
185  **11. INTERSTATE LAND SALES FULL DISCLOSURE ACT:** This Vacant Land Real Estate Purchase and Sale Agreement is **NOT** intended to
186  be used for situations in which Seller owns and is selling one hundred (100) or more lots. Properties containing one hundred (100) or more lots for
187  sale  may be subject to the reporting and disclosure requirements of the Interstate Land Sales Full Disclosure Act ("Act"), 15 USC § 1701 *et seq.*  If you have
188  questions regarding this Act, contact your attorney before signing.  Any contract or agreement for the sale or lease of a lot subject to the Act may be revoked
189  at the option of the purchaser or lessee until midnight of the seventh day following the signing of such contract or agreement or until such later time as may
190  be required pursuant to applicable law.  Any contract or agreement for the sale or lease of a lot for which a property report is required by the Act and the
191  property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may
192  be revoked at the option of the purchaser or lessee within two (2) years from the date of such signing.
193  **12. FARM/CROPS/TIMBER RIGHTS:** SELLER, or any tenant of SELLER, shall be allowed to harvest, sell or assign any annual crops which have been
194  planted on the PROPERTY prior to the date of this Contract, even though said harvest time may occur subsequent to the date of the settlement of this
195  contract, unless otherwise agreed by attached addendum.  If the crop consists of timber, then neither SELLER nor any tenant of SELLERS shall have any
196  right to harvest the timber unless the right to remove same shall be established by an attached addendum. Notwithstanding the provisions hereof, any tenant
197  who shall be leasing the PROPERTY shall be allowed to complete the harvest of any annual crops that have been planted prior to the date of Contract
198  Acceptance as previously agreed between SELLER and Tenant. **ANY AND ALL SUCH TENANT AGREEMENTS ARE TO BE ATTACHED.**
199  **13. NOXIOUS WEEDS:** BUYER of the PROPERTY in the State of Idaho should be aware that some properties contain noxious weeds. The laws of the
200  State of Idaho require owners of property within this state to control, and to the extent possible, eradicate noxious weeds. For more information concerning
201  noxious weeds and your obligations as an owner of property, contact your local county extension office.

BUYER'S Initials (_**[eea]**_)(_____) Date ___05/30/2018___          SELLER'S Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

Authentisign ID: 8070A156-6074-475B-934F-608AA48E98A5

**JULY 2017 EDITION**　　　　　**RE-24 VACANT LAND PURCHASE AND SALE AGREEMENT**　　　　　Page 4 of 6

**PROPERTY ADDRESS:** TBD   W Idaho Ave　　　　　Glenns Ferry　　　ID　83623　ID#: 98657748

202　**14. MINERAL RIGHTS:** Any and all mineral rights appurtenant to the PROPERTY are included in and are part of the sale of this PROPERTY, and are
203　not leased or encumbered, unless otherwise agreed to by the parties in writing.
204　**15. WATER RIGHTS:** Any and all water rights including but not limited to water systems, wells, springs, lakes, streams, ponds, rivers, ditches, ditch rights,
205　and the like, if any, appurtenant to the PROPERTY are included in and are a part of the sale of this PROPERTY, and are not leased or encumbered, unless
206　otherwise agreed to by the parties in writing.
207　**16. RISK OF LOSS OR NEGLECT:** Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be
208　materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of the BUYER.
209　**17. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject real
210　PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized
211　by the state of Idaho as found in Idaho Code §73-108. If the time in which any act required under this agreement is to be performed is based upon a
212　business day calculation, then it shall be computed by excluding the calendar day of execution and including the last business day. The first business day
213　shall be the first business day after the date of execution. If the last day is a legal holiday, then the time for performance shall be the next subsequent
214　business day.
215　**18. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, midnight to midnight, in the local time zone where the subject real
216　PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed
217　shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference
218　to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."
219　**19. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement or any application thereof, shall be invalid, illegal or
220　unenforceable in any respect, the validity, legality or unenforceability of the remaining provisions shall not in any way be affected or impaired thereby.
221　**20. TRANSMISSION OF DOCUMENTS:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed
222　facsimile or electronic transmission shall be the same as delivery of an original. At the request of either the BUYER or SELLER, or the LENDER, or the
223　Closing Agency, the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.
224　**21. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two
225　identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies
226　shall together constitute one and the same instrument.
227　**22. ENTIRE AGREEMENT:** This Agreement contains the entire Agreement of the parties respecting the matters herein set forth and supersedes all prior
228　Agreements between the parties respecting such matters.
229　**23. SALES PRICE INFORMATION:** Pursuant to Idaho Code §54-2083(6)(d), a "sold" price of real property is not confidential client information.
230　**24. AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this
231　agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.
232　**25. ADDITIONAL CONTINGENCIES AND COSTS:** The closing of this transaction is contingent upon written satisfaction or waiver of the
233　contingencies listed in the "contingencies" column below. In addition, the parties shall satisfy all contingencies set forth in this section by close of business
234　(Date):_____ unless otherwise agreed to by the parties in writing. The parties agree to pay the following costs as indicated below. None of the costs
235　to be paid by the parties in this section creates an inspection or performance obligation other than strictly for the payment of costs unless otherwise stated
236　below. There may be other costs incurred in addition to those set forth below. Such costs may be required by the lender, by law, or by other such
237　circumstances. Requested tests/inspection reports as indicated below shall be provided to the other party within _____business days (ten [10] if left blank)
238　prior to closing.
239　Upon closing SELLER agrees to pay ☐_____% of the purchase price OR ☐$_____ (dollar amount) (N/A if left blank)
240　of lender-approved BUYER'S closing costs, lender fees, and prepaid costs which include but are not limited to those items in
241　BUYER columns marked below. This concession can also be used for any other expense not related to financing at the BUYER's
242　discretion.

| COSTS | BUYER | SELLER | Shared Equally | N/A | CONTINGENCIES | BUYER | SELLER | Shared Equally | N/A |
|---|---|---|---|---|---|---|---|---|---|
| Appraisal Fee | | | | ✗ | Environmental Inspection (Phase 1) | | | | ✗ |
| Long Term Escrow Fees | | | | ✗ | Environmental Inspection (Phase 2) | | | | ✗ |
| Closing Escrow Fee | | | ✗ | | Environmental Inspection (Phase 3) | | | | ✗ |
| Survey Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ | PERC Test | | | | ✗ |
| Flood Certification/Tracking Fee | | | | ✗ | Zoning Variance | | | | ✗ |
| Title Ins. Standard Coverage Owner's Policy | | ✗ | | | Soil(s) Test(s) | | | | |
| Title Ins. Extended Coverage Lender's Policy – Mortgagee Policy | | | | ✗ | Hazardous Waste Report(s) | | | | ✗ |
| Additional Title Coverage | | | | ✗ | | | | | |
| Water Rights Transfer Fee | | ✗ | | | | | | | |
| Attorney Contract Preparation or Review Fee | | | | ✗ | | | | | |
| | | | | | | | | | |

BUYER'S Initials ( eea )( X_____ ) Date 05/30/2018　　　　　SELLER'S Initials (_____)( X_____ ) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**JULY 2017 EDITION**　　　　　**RE-24 VACANT LAND PURCHASE AND SALE AGREEMENT**　　　　　Page 4 of 6

InstanetFORMS

Authentisign ID: 8070A156-6074-475B-934F-603AA48E98A5

**JULY 2017 EDITION**    RE-24 VACANT LAND PURCHASE AND SALE AGREEMENT    Page 5 of 6

PROPERTY ADDRESS: **TBD  W Idaho Ave**    **Glenns Ferry**    **ID**    **83623**    ID#:    **98657748**

243 **26. DEFAULT: If BUYER defaults** in the performance of this Agreement, SELLER has the option of: (1) accepting the Earnest Money as liquidated
244 damages or (2) pursuing any other lawful right or remedy to which SELLER may be entitled. If SELLER elects to proceed under (1), SELLER shall make
245 demand upon the holder of the Earnest Money, upon which demand said holder shall pay from the Earnest Money the costs incurred by SELLER's Broker
246 on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of title insurance, escrow fees, credit report fees,
247 inspection fees and attorney's fees; and said holder shall pay any balance of the Earnest Money, one-half to SELLER and one-half to SELLER's Broker,
248 provided that the amount to be paid to SELLER's Broker shall not exceed the Broker's agreed-to commission. SELLER and BUYER specifically
249 acknowledge and agree that if SELLER elects to accept the Earnest Money as liquidated damages, such shall be SELLER's sole and exclusive remedy, and
250 such shall not be considered a penalty or forfeiture.  If SELLER elects to proceed under (2), the holder of the Earnest Money shall be entitled to pay the
251 costs incurred by SELLER's Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of brokerage fee, title
252 insurance, escrow fees, credit report fees, inspection fees and attorney's fees, with any balance of the Earnest Money to be held pending resolution of the
253 matter. **If SELLER defaults**, having approved said sale and fails to consummate the same as herein agreed, BUYER's Earnest Money deposit shall be
254 returned to him/her and SELLER shall pay for the costs of title insurance, escrow fees, credit report fees, inspection fees, brokerage fees and attorney's
255 fees, if any. This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled.
256

257 **27. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination or breach of this Agreement, BUYER and SELLER agree that
258 in the event of any controversy regarding the Earnest Money and things of value held by Broker or closing agency, Broker may reasonably rely on the terms
259 of this Agreement or other written documents signed by both parties to determine how to disburse the disputed money. However, Broker or closing agency
260 shall not be required to take any action but may await any proceeding, or at Broker's or closing agency's option and sole discretion, may interplead all parties
261 and deposit any moneys or things of value into a court of competent jurisdiction and shall recover all costs which were incurred as a result of the dispute
262 including, but not limited to, reasonable attorney's fees. If either parties' Broker incurs attorney's fees as a result of any Earnest Money dispute, whether or
263 not formal legal action is taken, said Broker is entitled to recover actual fees incurred from either BUYER or SELLER.
264

265 **28. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this
266 Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees
267 on appeal.
268

269 **29. TIME IS OF THE ESSENCE IN THIS AGREEMENT.**
270

271 **30. CLOSING:** On or before the closing date, BUYER and SELLER shall deposit with the closing agency all funds and instruments necessary to complete
272 this transaction. **Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale proceeds are**
273 **available to SELLER.** The closing shall be no later than (Date)_____ **06/15/2018**_____.
274 The parties agree that the CLOSING AGENCY for this transaction shall be_____ **GUARANTY TITLE**_____
275 located at _____**MOUNTAIN HOME, ID**_____. If a long-term escrow /collection is involved, then the long-term escrow holder
276 shall be_____.
277

278 **31. POSSESSION:** BUYER shall be entitled to possession ☒upon closing or ☐date _____ at _____ ☐am ☐pm.
279

280 **32. PRORATIONS:** Property taxes and water assessments (using the last available assessment as a basis), rents, interest and reserves, liens,
281 encumbrances or obligations assumed, and utilities shall be prorated ☐upon closing or as of ☐date _____.
282 BUYER to reimburse SELLER for fuel in tank ☐ Yes ☐ No ☒ N/A. Dollar amount may be determined by SELLER's supplier.
283

284 **33. SPECIAL CONSIDERATIONS AND CONTINGENCIES:** This Agreement is made subject to the following special considerations and/or
285 contingencies which must be satisfied prior to closing:_____
286 _____
287 _____
288 _____
289 _____
290 _____
291 _____
292

293 **34. REPRESENTATION CONFIRMATION:** Check one (1) box in Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the
294 brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).
295     Section 1:
296         ☒ A. **The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).**
297         ☐ B. **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.**
298         ☐ C. **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT**
299             **acting solely on behalf of the BUYER(S).**
300         ☐ D. **The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).**
301
302     Section 2:
303         ☒ A. **The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).**
304         ☐ B. **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.**
305         ☐ C. **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT**
306             **acting solely on behalf of the SELLER(S).**
307         ☐ D. **The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).**
308 Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho
309 real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy
310 was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A
311 BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.

**BUYER'S** Initials ( *ees* )(_____) Date ___05/30/2018___    **SELLER'S** Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

Authentisign ID: 8070A156-6074-475B-934F-608AA46E98A5

**JULY 2017 EDITION**          RE-24 VACANT LAND PURCHASE AND SALE AGREEMENT          Page 6 of 6

PROPERTY ADDRESS:  **TBD   W Idaho Ave**                    **Glenns Ferry**    ID    **83623**    ID#:    **98657748**

312  **35. ASSIGNMENT:** This Agreement and any rights or interests created herein ☐ may ☐ may not be sold, transferred, or otherwise assigned.
313
314  **36. ACCEPTANCE:** This offer is made subject to the acceptance, counter or rejection of SELLER and BUYER on or before (Date)  **03/10/18**
315  at (Local Time in which PROPERTY is located)_____**5:00**_____ ☐A.M. ☒P.M.
316
317
318  **37. BUYER'S SIGNATURES:**
319  ☐SEE ATTACHED BUYER'S ADDENDUM(S): _____ (Specify number of BUYER addendum(s) attached.)
320  ☐SEE ATTACHED BUYER'S EXHIBIT(S):_____ (Specify number of BUYER exhibit(s) attached.)
321
322                    ☐ **BUYER does currently hold an active Idaho real estate license.   ☐ BUYER is related to agent.**
323
324            Authentis...
325  **BUYER Signature** *Loretta L Bittenbender*_____    **BUYER (Print Name)** **Loretta L Bittenbender**_____
326       05/30/2018 05/30/2018 11:04:55 AM MDT
327  Date _____ Time _____  **11:04 AM**  ☉A.M. ☐P.M.   Phone # _____Cell #_____
328
329  Address_____   E-Mail      **lorelynn@ymail.com**_____
330
331  City_____ State _____ Zip _____  Fax #_____
332
333  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
334
335                    ☐ **BUYER does currently hold an active Idaho real estate license.   ☐ BUYER is related to agent**
336
337  **BUYER Signature**_____   **BUYER (Print Name)**_____
338
339  Date _____ Time _____ ☐A.M. ☐P.M.   Phone # _____Cell #_____
340
341  Address_____   E-Mail_____
342
343  City_____ State _____ Zip _____  Fax #_____
344
345
346  **38. SELLER'S SIGNATURES:** On this date, I/We hereby approve and accept the transaction set forth in the above Agreement and agree to carry out all
347  the terms thereof on the part of the SELLER.
348  ☐SIGNATURE(S) SUBJECT TO ATTACHED COUNTER OFFER
349  ☐SIGNATURE(S) SUBJECT TO ATTACHED ADDENDUM(S) # _____
350  ☐SIGNATURE(S) SUBJECT TO ATTACHED EXHIBIT(S) # _____
351
352                    ☐ **SELLER does currently hold an active Idaho real estate license.    ☐ SELLER is related to agent.**
353
354  **SELLER Signature**_____   **SELLER (Print Name)**_____
355
356  Date _____ Time _____ ☐A.M. ☐P.M.   Phone # _____Cell #_____
357
358  Address_____   E-Mail_____
359
360  City_____ State _____ Zip _____  Fax #_____
361
362  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
363
364                    ☐ **SELLER does currently hold an active Idaho real estate license.    ☐ SELLER is related to agent.**
365
366
367  **SELLER Signature**_____   **SELLER (Print Name)**_____
368
369  Date _____ Time _____ ☐A.M. ☐P.M.   Phone # _____Cell #_____
370
371  Address_____   E-Mail_____
372
373  City_____ State _____ Zip _____  Fax #_____
374
375
376                                    **LATE ACCEPTANCE**
377
378  If acceptance of this offer is received after the time specified, it shall not be binding on the BUYER unless BUYER approves of said acceptance within _____
379  calendar days (three [3] if left blank) by BUYER initialing HERE (_____)(_____) Date _____. If BUYER timely approves of SELLER's late
380  acceptance, an initialed copy of this page shall be immediately delivered to SELLER.

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**instanet**FORMS

Authentisign ID: 68ED7450-7D8E-432F-9950-D2512C407482

| | | JULY 2017 EDITION |
|---|---|---|
| **ADDENDUM #** _____1_____ | (All addendums shall be numbered sequentially.) | Page 1 of 1 |

IDAHO REALTORS
The Voice of Real Estate

# RE-11 ADDENDUM

THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, **CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT** BEFORE SIGNING.



1  Today's Date:_____ 06/05/2018 _____

3  This is an **ADDENDUM** to the ☒ Purchase and Sale Agreement ☐ Other_____
4  ("Addendum" means that the information below is added material for the agreement {such as lists or descriptions} and/or means the form is
5  being used to change, correct or revise the agreement {such as modification, addition or deletion of a term}).

7  **AGREEMENT DATED:**_____ 05/30/2018 _____  **ID #** _____ 98657748 _____

9  **ADDRESS:** TBD  W Idaho Ave _____ Glenns Ferry    ID    83623

11  **BUYER(S):** _____ Loretta L Bittenbender _____

13  **SELLER(S):** _____ Jeremy J. Gugino, Trustee _____

15  The undersigned parties hereby agree as follows:
16  1. The property is being sold in an as is where is condition. Seller makes no
17  warranties of any kind
18  as to habitability.

21  2. The property will be transferred by a trustee's deed.

24  3. The sale of the property is contingent on U.S. Bankruptcy Court approval
25  and an opportunity to
26  receive higher bids for the property.
27  The End

48  To the extent the terms of this ADDENDUM modify or conflict with any provisions of the Purchase and Sale Agreement including all prior
49  Addendums or Counter Offers, these terms shall control. **All other terms of the Purchase and Sale Agreement including all prior**
50  **Addendums or Counter Offers not modified by this ADDENDUM shall remain the same.** Upon its execution by both parties, this agreement
51  is made an integral part of the aforementioned Agreement.

52                                                                    06/13/2018
53  **BUYER:** _Loretta L Bittenbender_____  Date: _____
54  ⌐6/13/2018 7:46:59 AM MDT
    Loretta L. Bittenbender
55  **BUYER:** _____  Date: _____

58  **SELLER:** _____  Date: _____
59              Jeremy J. Gugino, Trustee
60  **SELLER:** _____  Date: _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. **USE BY ANY OTHER PERSON IS PROHIBITED.** ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS